THE PEOPLE v. DALIÓ.

APPEAL from the District Court of Ponce.

No. 435.—Decided June 18, 1912.

CRIMINAL LAW—OFFERING FOR SALE—SALE OF ADULTERATED MILK—VARIANCE BE-
TWEEN ALLEGATIONS AND PROOF.—The act of selling milk includes an offer on
the part of the seller and the acceptance on the part of the buyer, and, in
order that the sale may be complete, it is necessary to include the offer of the
milk for sale. The fact that it has been proved against a defendant accused
of offering adulterated milk for sale that the milk which he was offering was
pure and that which he had sold shortly before had been found to be adul-
terated does not, therefore, constitute a variance between the allegations and
the proof.

ID.—EVIDENCE—CHEMICAL ANALYSIS.—The words "adulterated with water"
which under the heading of "notes" or "observations" appear in a certifi-
cate of the chemical analysis of adulterated milk do not constitute the sub-
stantial part of said certificate, especially when said document shows that the
milk contained 10.16 per cent only of solid matter when, if the milk had been
pure, it should have been shown at least 12 per cent.

ID.—APPEAL—CONTRADICTORY EVIDENCE—FINDINGS OF TRIAL COURT.—When the
evidence is contradictory the weight given to it by the trial court will not be
disturbed generally by this court unless it is shown that the trial court
was influenced by partiality, prejudice, or passion, or that it committed
manifest error.

The facts are stated in the opinion.
*Mr. Felipe Casalduc* for appellant.

*Mr. Charles E. Foote, fiscal,* for respondent.

MR. JUSTICE MacLEARY delivered the opinion of the court.

The appellant in this case was convicted of. an offense against the public health in violating the law designed to punish persons guilty of the adulteration of milk. The complaint charges that on January 30, 1912, in the city of Ponce, the accused, Bartolo Dalió, offered for sale to the public, as pure, cow's milk which was adulterated. To this charge he pleaded not guilty, and on February 29 he was convicted in a trial before the court and sentenced to 30 days' imprisonment in jail and the payment of costs. From this judgment he took an appeal, and presents various reasons for the reversal thereof.

In the first place, he contends that the milk offered for sale was pure, and makes a point of the alleged fact that the inspector made an examination of the milk contained in his cans, and which was being carried around in his cart for sale, and found the same to be pure, while the inspection and test made of two half bottles of milk taken from the possession of Ana Semidey was found to be adulterated. The defendant, in his testimony, denies that he sold this milk or, at least, says that he does not know whether he sold it or not, and contends that one of the half bottles was taken from the hands of the woman and the other from her house. In her testimony Ana Semidey says that she bought both the half bottles from the defendant, and that the inspector, McDonald, took one of them from her hands as she stood near the cart, and the other she brought him from the house where she had placed it under a chair. The defendant claims a variance between the allegations in the proof in this: That he was accused of offering adulterated milk for sale and not of selling it, while the proof shows that the milk which he was offering for sale, to wit, that in his cart, was pure, and that which was found to be impure had already been sold. To this it is replied that the sale of the milk includes the

offer on the part of the vendor and the acceptance on the part of the vendee, and that the complete sale necessarily includes the offering of the article for sale. This is certainly reasonable and logical, and the alleged variance between the allegations and the proof is more fanciful than real.

In the second place, the appellant alleges that the certificate of the chemist only shows his conclusions that the milk was adulterated with water. It is true that in the certificate, under the heading of "notes," or "observations," the words "adulterated with water" occur; but this is not the substantial part of the certificate which shows the composition of the milk examined and that the fluid contained 10.16 per cent of solid matter when, if the milk had been pure, it should have shown at least 12 per cent. This fact plainly shows that the conclusion, if such it might be called, of the chemist that the milk had been adulterated with water was correct, and the court was able to draw the conclusion from the facts as well as the chemist.

In the third place, the defendant claims that one of the half bottles of milk examined was taken from the house and the other from the witness (the woman who testified), and that this milk was not tested on the spot in presence of the accused, but in the booth of a dealer near by, and that the accused did not sell the milk tested. This is partly a repetition of the first defense. The evidence is conflicting as to whether or not the test was made in the presence of the accused. The owner of the booth, Gabriel Vélez, testified that Dalió was part of the time on his cart and part of the time walking back and forth, and there is nothing to show that he could not have seen the process and the operations of the inspector making the test had he so desired, and no prejudice appears to have been occasioned to him by any irregularity, if such there was, in the operation of testing.

Finally, the appellant relies on the reasonable doubt of his guilt as shown by the record. As it is sought to show

that the facts did not justify his conviction, we will quote the testimony of the two principal witnesses at length.

James D. McDonald, the inspector, testified as follows:

''That he was a resident of Ponce, exercising the office of inspector of milk, and that on January 30, 1912, he was on the street Brigadier Castro, where he saw Dalió sell milk to a lady, filling two bottles from a can; that he then tested the milk in one of the bottles and it turned out very bad; that the accused, Dalió, told him that what he ought to test was the milk he was carrying in his cart for sale; that he tested the milk of Ana Semidey in the apparatus; that he did not find it good and that he took out three samples of it, sending one to San Juan the same day; that he marked the sample 'No. 14, J. D. M. D., January 30, 1912,' and that the chemist in San Juan sent back to him the report which was issued on the trial and accepted as evidence by the *fiscal* and the defense. That he also tested the milk which Dalió was carrying for sale in his cart and it was good, making the test of the milk of three or four bottles and also that in the can. That he carried the milk taken from the woman to the milk stand of Gabriel Vélez and that was where he tested it with his apparatus, afterward giving a tested sample to Dalió and sending the other to San Juan; and that on another occasion he tested the milk which the accused was selling and found it also good; that he did this in the street in front of the cart where he took the sample of milk, but the second time he made the test in the stand of Gabriel Vélez because there he had a place where he could fix his little machine; that he filled the two bottles belonging to the woman with milk from the can, and this same witness was he who delivered to the woman all the milk which there was in the can; and that Dalió was present while the witness tested the milk and when he took the samples.''

Ana Semidey testified as follows:·

''That she is a resident of Ponce; that she is accustomed to buy milk from Dalió, and that on January 30, 1912, when he was selling milk, the inspector presented himself and took a half bottle from her hand and afterward the other half bottle which she had had filled and placed under a chair in the room of her house; that he emptied it into a can and tested it there, and after testing it the inspector went off with Dalió and she does not know what took place between them; that when she delivered the two half bottles to Dalió in order that he

might fill them with milk they were empty, and when he finished filling the second bottle the inspector arrived. That her house is on the corner of the streets Captain Correa and Brigadier Castro."

The other witnesses corroborated these, with the exception of the defendant himself, who contradicts them on some unimportant points. Wherever the testimony is contradictory, the court seems to have weighed it carefully and correctly. There is nothing to show partiality, prejudice or passion, or manifest error in the consideration of the testimony.

Taking the whole record together, and applying the law to the facts, it is sufficiently clear to our minds that substantial justice has been attained in the conviction of this defendant, and the judgment should be accordingly affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.